IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

Leon Pfingsten,

        Plaintiff,

vs.

Southern Wisconsin Auto and Tire, LLC and Paccar, Inc.,

        Defendants.

Civil No. 3:16-cv-316

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND FINDING DEFENDANTS' COMPETING MOTIONS FOR SUMMARY JUDGMENT ON THE CROSSCLAIM AGAINST PACCAR, INC. MOOT**

### INTRODUCTION AND SUMMARY OF DECISION

Before the court are Defendants Southern Wisconsin Auto and Tire, LLC ("SWAT") and Paccar, Inc.'s ("Paccar") Motions for Summary Judgment.[1] Plaintiff Leon Pfingsten ("Pfingsten") suffered property damage when a 1995 Peterbilt 378 truck (the "Peterbilt") manufactured by a subsidiary of Paccar and purchased from SWAT started on fire in his commercial shop.[2] The action was commenced in the Southeast Judicial District of North Dakota for Ransom County and later removed to this court.[3] Pfingsten's Complaint includes the following causes of action: (1) Breach of Implied Warranty by Paccar; (2) Negligence by Paccar; (3) Breach of Implied Warranty by SWAT; (4) Negligence by SWAT; and (5) Negligent Misrepresentation by SWAT.[4] SWAT also filed a crossclaim against Paccar to assume the cost of SWAT's defense and any liability imposed upon SWAT.[5]

---

[1] Doc. #17, Paccar's Mot. for Summ. J.; Doc. #22, SWAT's Mot. For Summ. J.
[2] For the purposes of this Order, Paccar, Inc. and its subsidiary Peterbilt Motors Company will be referred to collectively as Paccar.
[3] Doc. #1, Notice of Removal.
[4] Doc. #1-1, Compl. ¶¶ 14–33.
[5] Doc. #1-1, SWAT's Answer ¶¶ 39–49.

1

Pfingsten has voluntarily withdrawn his claims against Paccar for breach of implied warranty and negligence.[6] Accordingly, Paccar's Motion for Summary Judgment on these claims is MOOT, and the claims are WITHDRAWN and DISMISSED. Because the economic loss doctrine precludes liability for Pfingsten's tort claims, SWAT's Motion for Summary Judgment on the negligence and negligent misrepresentation claims is GRANTED. SWAT's Motion for Summary Judgment on the breach of implied warranty claim against it is GRANTED because Pfingsten waived the claim, and, even if he had not, the contract between Pfingsten and SWAT clearly and conspicuously disclaimed any warranties. SWAT and Paccar's Motions for Summary Judgment on the crossclaim are DISMISSED as MOOT.

## FACTUAL BACKGROUND

This case arises out of the sale of a 1995 Peterbilt truck by Southern Wisconsin Auto and Tire to Leon Pfingsten. On February 25, 2015, a fire originated in the engine compartment, causing significant damage to Pfingsten's commercial shop and other property within the shop.[7]

Peterbilt trucks, including the one at issue here, are designed and manufactured by Paccar.[8] Paccar finished manufacturing the Peterbilt on April 16, 1995, and sold and delivered the truck five days later to its first purchaser, an independent dealership that sells and services Peterbilt trucks.[9]

---

[6] Doc. #25, Pl.'s Mem. in Opp'n to Def. SWAT's Mot. for Summ. J. ¶ 30.
[7] Doc. #1-1, Compl. ¶ 13.
[8] Doc. #1-1, Compl. ¶ 5; Doc. #18, Darrah Aff. ¶ 3.
[9] Doc. #18, Darrah Aff. ¶ 7; Doc. #18-2, Chassis Bill.

Sometime in early 2015, Pfingsten contacted SWAT looking to purchase an older Peterbilt truck.[10] These negotiations fell through because Pfingsten was unable to raise sufficient funds to complete the purchase in a timely manner.[11] In part because SWAT was aware that Pfingsten was still in the market for an older Peterbilt truck, SWAT purchased the truck at issue in this case at an online auction on February 11, 2015.[12] Between the Peterbilt's completion in 1995 and SWAT's purchase in 2015, the Peterbilt had at least three owners.[13]

Immediately after purchasing the Peterbilt, SWAT posted an online advertisement to resell the truck.[14] The advertisement stated that SWAT "DO[ES] NOT DO D.O.T. INSPECTIONS ON THESE TRUCKS AND PURCHASER WOULD BE RESPONSIBLE FOR DOING THEM IN HIS/HER STATE" and also that "WE ENCOURAGE PERSONAL INSPECTION OF THE TRUCKS. . . . IF YOU WANT TO INSPECT THE EQUIPMENT BEFORE YOU BUY FEEL FREE TO CALL FOR AN APPT."[15]

Later that day, Pfingsten and SWAT discussed the Peterbilt over the phone.[16] The parties disagree about what was said during this call. Pfingsten alleges that Danny Wessels, general manager of SWAT, told him that the Peterbilt was "in great shape," that SWAT "believed it has been overhauled," that the engine was "really tight," and that the truck had been "through our shop and checked."[17] SWAT, on the other hand, claims that those

---

[10] Doc. #24, Wessels Aff. ¶ 3.
[11] Id.
[12] Id. at ¶¶ 3–4.
[13] Doc. #29-1, Wessels Dep. 58:24–59:14.
[14] Id. at ¶ 4.
[15] Doc. #24-1, Online Advertisement.
[16] Doc. #24, Wessels Aff. ¶ 5.
[17] Doc. #26, Pfingsten Aff. ¶ 5.

statements were made regarding the earlier truck that Pfingsten did not purchase and that instead SWAT told Pfingsten that the Peterbilt was an older truck, that SWAT had not performed any work or repairs, and that the vehicle would be sold as-is without warranties.[18]

After this call, Pfingsten signed the "Motor Vehicle Purchase Contract" for the Peterbilt.[19] The contract stated that the Peterbilt was being sold "**AS IS - NO WARRANTY.**"[20] The contract also specifically "disclaim[ed] implied warranties of merchantability and fitness for a particular purpose."[21] After Pfingsten signed the contract, a SWAT employee drove the Peterbilt from Indianapolis to SWAT's lot in Wisconsin where it sat for a few hours.[22]

On either February 22 or 24, 2015,[23] SWAT delivered the Peterbilt to the Petro truck stop in Fargo, North Dakota, for Pfingsten to pick it up.[24] When Pfingsten and his employee Gerald Sletmoe arrived at the truck stop, the Peterbilt would not start.[25] After some truck stop employees were able to start the Peterbilt, Sletmoe drove it to Pfingsten's home in Sheldon, North Dakota, with Pfingsten following in his personal vehicle.[26] According to Pfingsten, the Peterbilt leaked water, smoke, and antifreeze during the drive.[27] Pfingsten

---

[18] Doc. #24, Wessels Aff. ¶ 5; Doc. #32, Wessels Supp. Aff. ¶¶ 2–3.
[19] Doc. #24, Wessels Aff. ¶ 5; Doc. #26, Pfingsten Aff. ¶ 7.
[20] Doc. #24-2, Motor Vehicle Purchase Contract 1 (emphasis in original).
[21] Id.
[22] Doc. #24, Wessels Aff. ¶ 6.
[23] Dan Wessels' affidavit says delivery occurred on February 22, 2015, while Pfingsten's Complaint says delivery occurred on February 24, 2015.
[24] Id. at ¶ 7; Doc. #1-1, Compl. ¶ 8.
[25] Doc. #24, Wessels Aff. ¶ 9; Doc. #26, Pfingsten Aff. ¶ 8.
[26] Doc. #24, Wessels Aff. ¶ 9; Doc. #26, Pfingsten Aff. ¶ 9.
[27] Doc. #26, Pfingsten Aff. ¶ 9.

parked the Peterbilt in his commercial shop and, upon inspecting the truck, noticed many deficiencies.[28]

On February 25, 2015, while the Peterbilt was still parked inside the shop, a fire started in the engine compartment and spread, causing significant damage to the Peterbilt, the shop, and other property located inside the shop.[29] Pfingsten brought this suit against SWAT and Paccar to recover for the damage to the shop and other property.[30] SWAT and Paccar now bring these Motions for Summary Judgment on all the claims in Pfingsten's Complaint and on SWAT's crossclaim against Paccar.[31]

## DISCUSSION

**1. Summary Judgment Standard**

Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.[32] Summary judgment is available "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[33] When the record as a whole at the time of the motion "could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is appropriate.[34] A party opposing summary judgment "may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to

---

[28] Id. at ¶ 10.
[29] Doc. #1-1, Compl. ¶ 13.
[30] Id. at ¶ 34.
[31] Doc. #17, Paccar's Mot. for Summ. J.; Doc. #22, SWAT's Mot. For Summ. J.
[32] FED. R. CIV. P. 56(a).
[33] Arena Holdings Charitable, LLC v. Harman Prof'l, Inc., 785 F.3d 292, 293 (8th Cir. 2015) (quoting Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011)).
[34] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

raise a genuine issue for trial."[35] As such, evidence must exist on which the jury could find for the plaintiff.[36] In ruling on a summary judgment motion, a court must view the facts in the light most favorable to the non-moving party.[37]

**2.      Pfingsten's Claims Against Paccar**

Pfingsten has voluntarily withdrawn both of his claims against Paccar. Paccar's Motion for Summary Judgment on Counts One and Two of the Complaint is therefore rendered MOOT. Counts One and Two of the Complaint are WITHDRAWN and DISMISSED without prejudice.

**3.      Pfingsten's Claims Against SWAT**

   **A.      Breach of Implied Warranty by SWAT**

SWAT has moved for summary judgment on Pfingsten's breach of implied warranty claim because SWAT sold the Peterbilt "AS IS" and disclaimed any implied or express warranties through clear language. SWAT also argues that Pfingsten waived its breach of implied warranty claim by failing to oppose SWAT's basis for summary judgment and show that there are any genuine issues of material fact.

A party's "failure to oppose a basis for summary judgment constitutes a waiver of that argument."[38] The non-movant is responsible to show that there are genuine issues of material fact in the record precluding the summary judgment sought by the movant.[39] It is

---

[35] Wood v. SatCom Mktg, LLC, 705 F.3d 823, 828 (8th Cir. 2013) (quoting Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078–79 (8th Cir. 2008)).
[36] Wood, 705 F.3d at 828 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).
[37] Id. (quoting Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)).
[38] Satcher v. Univ. of Arkansas at Pine Bluff Bd. Of Trustees, 558 F.3d 731, 735 (8th Cir. 2009).
[39] Id. at 734. See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials . . . , but must set forth specific facts showing that there is a genuine issue for trial.").

6

not the court's responsibility "to sift through the record to see if, perhaps, there was an issue of fact."[40]

In his response brief, Pfingsten does not respond to SWAT's argument that summary judgment is proper on the breach of implied warranty claim. Instead, Pfingsten focuses entirely upon his negligence and negligent misrepresentation claims against SWAT. Accordingly, Pfingsten has waived the breach of implied warranty claim against SWAT, and summary judgment is appropriate.

Even if Pfingsten did not waive the claim, it would fail on the merits. In order to succeed on a breach of warranty claim, a party must first establish the existence of a warranty.[41] Both the implied warranty of merchantability and the implied warranty of fitness may properly be excluded so long as "the language . . . mention[s] merchantability and in case of a writing [is] conspicuous" and the exclusion of any implied warranty of fitness is "by a writing and conspicuous."[42] Further, "[u]nless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is.'"[43]

Here the Contract clearly excludes any implied warranties. After the bolded words, "WARRANTY & SERVICE CONTRACT INFORMATION," SWAT "disclaims implied warranties of merchantability and fitness for a particular purpose." Right below are the bolded words "AS IS - NO WARRANTY," followed by a statement that the "vehicle is sold AS IS." Such language is sufficiently clear and conspicuous to disclaim the warranties that

---

[40] Satcher, 558 F.3d at 735 (citing Rodgers v. City of Des Moines, 435 F.3d 904, 908 (8th Cir. 2006)).
[41] Eggl v. Letvin Equip. Co., 2001 ND 144, ¶ 8, 632 N.W.2d 435, 439 (N.D. 2001) (quoting Hagert v. Hatton Commodities, Inc., 384 N.W.2d 654, 657 (N.D. 1986)).
[42] N.D. CENT. CODE § 41-02-33(2).
[43] N.D. CENT. CODE § 41-02-33(3)(a).

Pfingsten alleges were breached by SWAT.[44] Accordingly, SWAT's Motion for Summary Judgment on Count Three of the Complaint is GRANTED.

### B. The Economic Loss Doctrine Bars Pfingsten's Tort Claims

Next, SWAT argues that Pfingsten's tort claims (negligence and negligent misrepresentation) are barred by the economic loss doctrine. Under the doctrine, "economic loss resulting from damage to a defective product, *as distinguished from damage to other property* or persons, may be recovered in a cause of action for breach of warranty or contract, but not in a tort action."[45] Based on the emphasized phrase, Pfingsten responds that the economic loss doctrine does not actually bar his tort claims because he seeks damages primarily for damage to other property, not the Peterbilt.

While the North Dakota Supreme Court has not considered whether tort recovery is permitted when the damage is to "other property," the Federal Courts of this District and Circuit have addressed the issue.[46] Contrary to Pfingsten's interpretation of the economic loss doctrine, these courts have adopted an expansive approach and have predicted that the North Dakota Supreme Court would bar recovery for physical damage to "other property" where the "damage was a foreseeable result of a defect at the time the parties contracted."[47]

---

[44] See Ward Farms P'ship v. Enerase Coop. Res., 2015 ND 136, ¶¶ 20, 22, 863 N.W.2d 868, 874 (N.D. 2015) (holding that "[t]he undersigned . . . understands that [the items] do not carry any warranty. All items sold 'As-Is, Where-Is.'" was a clear and conspicuous disclaimer of any warranties and thus summary judgment was proper).

[45] Leno v. K & L Homes, 2011 ND 171, ¶ 17, 803 N.W.2d 543, 550 (N.D. 2011) (quoting Steiner v. Ford Motor Co., 2000 ND 31, ¶ 7, 606 N.W.2d 881, 884 (N.D. 2000)) (emphasis added).

[46] Everkrisp Vegetables, Inc. v. Tobiason Potato Co., 870 F. Supp. 2d 745, 750–51 (D.N.D. 2012).

[47] Id. at 751 (citing Dakota Gasification Co. v. Pascoe Bldg. Sys., 91 F.3d 1094, 1099 (8th Cir. 1996); DJ Coleman, Inc. v. Nufarm Americas, Inc., 693 F.Supp.2d 1055, 1064 (D.N.D. 2010); Albers v. Deere & Co., 599 F.Supp.2d 1142 (D.N.D. 2008)).

As no subsequent state court decision or statutory amendment brings the court's reasoning into question, the court will adhere to its precedent.[48]

In Dakota Gasification Co., the Eighth Circuit noted that the roof of the plaintiff's oxygen plant collapsed due to a faulty weld on some of the defendant's materials, causing damage to items within the plant.[49] The court went on to hold that the economic loss doctrine precluded tort liability for "damage to other nearby property of commercial purchasers who could foresee such risks at the time of purchase."[50] This is instructive to the case at bar.

Here, the damage was similarly foreseeable. Pfingsten took possession of a 20-year-old used truck and upon arriving at his property, he parked it inside his commercial shop building. It is indisputable that defects in vehicles can cause spontaneous fires. Thus, it was foreseeable that if a defect in the Peterbilt were to cause the Peterbilt to start on fire, the fire could spread and damage the shop and property within it. Because damage to other property was foreseeable, the economic loss doctrine precludes liability for such damage. SWAT's Motion for Summary Judgment on Pfingsten's tort claims in Counts Four and Five is GRANTED.

### 4. SWAT's Crossclaim Against Paccar

SWAT and Paccar have both moved for summary judgment on SWAT's crossclaim against Paccar for indemnity. Because none of the Pfingsten's claims survive summary judgment, the remaining summary judgment motions on SWAT's crossclaim are DISMISSED as MOOT.

---

[48] Everkrisp Vegetables, Inc., 870 F. Supp. 2d at 751.
[49] Dakota Gasification, 91 F.3d at 1097.
[50] Id. at 1101.

9

## CONCLUSION

For the foregoing reasons, summary judgment is **GRANTED** in favor of Paccar and SWAT on all claims in Pfingsten's Complaint. The remaining motions for summary judgment on SWAT's crossclaim are **DISMISSED as MOOT**. Paccar's Motion for Hearing[51] is **DENIED**, as the court is fully apprised of the issues and argument would not be helpful.

**IT IS SO ORDERED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated this 19th day of September, 2017.

                                                  /s/ Ralph R. Erickson
                                              Ralph R. Erickson, District Judge
                                              United States District Court

---

[51] Doc. #33, Paccar's Mot. For H'rg.